UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION
CIVIL FILE NO.: 00-689 (JRT/RLE)

Vickey Jean Johnson,

Plaintiff,

v.

WAL-MART STORES, INC. and
Edward Prayfrock,

Defendants.

**STIPULATION TO AMEND COMPLAINT**
and
ORDER

---

1. WHEREAS this action was filed on or about March 16, 2000, and Defendant WAL-MART STORES, INC. ("WAL-MART") was served with process; and

2. WHEREAS Defendant WAL-MART timely served its Answer on May 3, 2000; and

3. WHEREAS Plaintiff has not served Defendant Prayfrock despite repeated efforts, and therefore seeks to have Prayfrock dismissed from this action with prejudice so that the action may proceed against Defendant WAL-MART; and

4. WHEREAS Plaintiff seeks leave to withdraw Count Five, a claim for violation of the Violence Against Women Act, 42 U.S.C. § 13981 ("VAWA"), because the United States Supreme Court has held that the VAWA is unconstitutional; and

5. WHEREAS nothing herein shall be deemed or construed to reduce, diminish or release Plaintiff's claims against Defendant WAL-MART; and

6. WHEREAS the parties agree and stipulate that Plaintiff shall file an Amended Complaint in the form attached hereto, dropping Prayfrock as a Defendant and withdrawing Count Five, a

FILED AUG 3 0 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

claim under VAWA.

THEREFORE, the parties stipulate and consent that Plaintiff shall file an Amended Complaint in the form attached hereto.

Dated: 8-24-00

**LORI PETERSON & ASSOCIATES**

Lori Peterson, #212490
Tracy N. Tool, #213524
Attorneys for Plaintiff
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, Minnesota 55402
(612) 321-0606

Dated: 8/29/00

**BRIGGS & MORGAN**

Gregory J. Stenmoe, #131155
Jason M. Hedican, #271548
Attorneys for Defendant Wal-Mart
80 South Eighth Street
Minneapolis, MN 55402
(612) 334-8400
(612) 321-0606

IT IS HEREBY ORDERED, that leave to amend in accordance with the above Stipulation is hereby granted.

Dated: 8/30/00

Magistrate Judge Raymond Erickson
United States District Court

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION
CIVIL FILE NO.: 00-689 (JRT/RLE)

Vickey Jean Johnson,

Plaintiff,

v. **AMENDED COMPLAINT**

WAL-MART STORES, INC.,

Defendant.

---

Plaintiff Vickey Jean Johnson, for her Complaint against Defendant, states and alleges as follows:

**JURISDICTION**

1. This action arises under the laws of the United States; this Court's federal question jurisdiction rests on U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a).

2. Venue is proper because the events giving rise to the cause of action arose in this District.

**PARTIES**

3. Plaintiff Vickey Jean Johnson resided in Grand Rapids, Minnesota during the events relevant to this case, and now resides in Maryland.

4. Plaintiff was employed as Support Manager (and other positions) at the Grand Rapids WAL-MART store from approximately December 10, 1990 through approximately November 19, 1999.

5. WAL-MART STORES, INC. ("WAL-MART") is in business at 1400 Pokegama Avenue, South in Grand Rapids, Minnesota 55744. It is headquartered at 702 S.W. 8th Street, Bentonville, Arkansas 72716.

6. At all relevant times, Defendant WAL-MART has been an "employer(s)" under Minn. Stat. § 363.01 subd. 17, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and 2000e-2.

7. Ed Prayfrock ("Prayfrock") was Plaintiff's manager and direct supervisor during her employment with WAL-MART.

**FACTS**

8. Plaintiff became employed by WAL-MART as a Sales Associate on December 10, 1990 at the 1400 Pokegama Avenue, South store in Grand Rapids, Minnesota 55744. Her most recent position was Support Manager. WAL-MART's headquarters are located at 702 S.W. 8th Street, Bentonville, Arkansas 72716.

9. Plaintiff's work performance was evaluated by WAL-MART as good and above standard. In fact, WAL MART entrusted Plaintiff to train other employees. Plaintiff was not suspended, warned, put on probation or terminated. Plaintiff was, however, constructively discharged by Defendant on approximately November 19, 1999.

10. In early 1999, Prayfrock became WAL-MART's Assistant Manager and Plaintiff's supervisor. Manager Prayfrock had authority to hire and fire and to give work instructions to employees, including Plaintiff.

11. After Manager Prayfrock became employed at WAL-MART, Plaintiff became subjected to sexual harassment, discrimination and other illegal acts including, but not limited to:

a) Although WAL-MART professed to have a policy forbidding "romantic" involvement between a supervisor and someone s/he supervises or with someone whose terms and conditions of employment

s/he may influence, and even though Plaintiff repeatedly pointed out this policy to him, Manager Prayfrock continually pursued a non-professional relationship with her.

b) On March 22, 1999, Manager Prayfrock began calling Plaintiff at her home and asking her out. Plaintiff asked him whether it wasn't against policy to date an associate, but he said he'd take the risk. Plaintiff also told him that she had a boyfriend.

c) Manager Prayfrock told Plaintiff he had been watching her at work and had become attracted to her. Although Plaintiff kept telling him she had a boyfriend, he kept coming on to her.

d) Manager Prayfrock gave Plaintiff inappropriate notes and cards at work even though she told him not to. He also followed Plaintiff around the workplace, which embarrassed her in front of her co-workers.

e) Manager Prayfrock then started saying he wanted to come over for dinner. Although Plaintiff made it clear he was not welcome, he showed up at Plaintiff's home, uninvited, and demanded dinner.

f) On April 24, 1999, Manager Prayfrock called Plaintiff at a friend's wedding dance and told her to get over to his house "now, or else."

g) On April 30, 1999, Manager Prayfrock told Plaintiff he was going to South Dakota with her.

h) On May 15, 1999, Manager Prayfrock invited himself

along, uninvited, on Plaintiff's family's camping trip. Plaintiff again told him he should leave her alone, but he refused.

i) Plaintiff received differential treatment based on her gender (which included Manager Prayfrock's sexual interest in and jealousy of her).

j) Manager Prayfrock continued calling Plaintiff at home and following her around the store. He continued to ask Plaintiff out and she continued to reject him while reminding him it was against policy to date subordinates. He again responded he would take the risk.

k) Manager Prayfrock repeatedly made uninvited visits to Plaintiff's home. He sat outside her apartment, watched her through binoculars and followed her if she left the house.

l) Manager Prayfrock made harassing phone calls to Plaintiff at her work and at her home.

m) Manager Prayfrock made offensive comments about Plaintiff's breasts, buttocks and other body parts.

n) Manager Prayfrock grabbed Plaintiff's breasts and buttocks against her will on WAL-MART's property.

o) Although Plaintiff repeatedly told Manager Prayfrock to leave her alone, he ignored her objections and continued abusing her.

p) Manager Prayfrock followed Plaintiff around the store, outside the store, in the parking lot and

around town. In the store, he intentionally walked down aisles Plaintiff was in and cut her off so she couldn't get around him. In fact, on July 20, another co-worker complained to WAL-MART's personnel manager about Prayfrock following and cornering Plaintiff in the store.

q) Manager Prayfrock harassed Plaintiff at work from approximately April through July of 1999. He coerced her into a sexual relationship that she did not welcome nor invite. When Plaintiff told him she could not take it anymore, he threatened to fire her. He also threatened to fire Plaintiff if she told anyone else in management about his misconduct.

12. Not only did Plaintiff complain to Manager Prayfrock about his misconduct, she reported Prayfrock's misconduct to Manager Tim Gardena on July 21, 1999.

13. When Plaintiff rejected Manager Prayfrock's advances, and when she made complaints to other managers of WAL-MART, she was subjected to retaliation including, but not limited to:

a) Manager Prayfrock said if Plaintiff didn't go out with him, he would fire her. He followed Plaintiff around, called her at all hours of the night and refused to leave her alone.

b) Although Plaintiff told Manager Prayfrock to stop calling her and even changed her phone number, he got her new number and continued to harass her by phone and in person.

c) When Manager Prayfrock forced sexual acts on Plaintiff and she loudly told him to stop, he stuck a pillow over her mouth.

d) Manager Prayfrock made threats to Plaintiff including saying if he couldn't have her, no one can.

e) Manager Prayfrock frightened Plaintiff with threatening and abusive behavior including stalking her, tracking her movements, invading her privacy by peeping in her windows and recording the comings and goings of her visitors.

f) Manager Prayfrock told Plaintiff if she ever thought of rejecting him, he'd make sure she was fired. He even said Plaintiff wasn't allowed to see anyone but him or he'd make her life a living hell.

g) Manager Prayfrock followed Plaintiff to restaurants, sat outside her house and kept track of her schedule.

h) Manager Prayfrock threatened to terminate Plaintiff's employment.

i) Manager Prayfrock threatened Plaintiff with physical harm.

j) In August of 1999, Plaintiff was falsely accused of failing to show up for work.

k) Also in August of 1999, WAL-MART did not deposit the correct amount in Plaintiff's account and responded to her cash advance request differently from how it

had before she made complaints.

l) On August 10, 1999, Manager Prayfrock was allowed back in WAL-MART's store, causing Plaintiff great fear and stress.

m) On August 19, 1999, Plaintiff obtained a restraining order against Prayfrock. Shortly thereafter, WAL-MART changed Plaintiff's schedule without her knowledge. It then falsely accused Plaintiff of not showing up for work when Plaintiff was not even aware of the change. WAL-MART also treated her food and lodging vouchers differently than it had prior to her complaints.

14. Due to WAL-MART's actions and inactions, Plaintiff has suffered and continues to suffer physical and emotional distress including, but not limited to: shaking, dizziness, rapid pulse, nightmares, weight fluctuations, numbness, increased blood pressure, vomiting, bowel problems, skin changes, headaches, stomach distress, insomnia, loss of appetite, loss of concentration, fatigue, lethargy, chronic pain, muscle tension, nausea, diarrhea, constant fear of physical danger, sadness, hopelessness, worthlessness, nervousness, self-consciousness, lack of trust, loss of interest, depression, lowered self-confidence, feelings of shame and insecurity, feelings of paranoia, humiliation, fear, embarrassment and thoughts of suicide. Plaintiff has obtained counselling and has been prescribed an antidepressant and sleeping medication.

15. On August 24, 1999, Plaintiff was placed on medical leave

due to situational stress disorder.

16. When Plaintiff returned from her leave, WAL-MART's management treated her with coldness, and subjected her to increased, unnecessary scrutiny and criticism. Plaintiff was also asked about her living arrangements and sex life. The assistant manager even told her she wanted her to return to work to "we can look at hot guys." Management also scheduled Plaintiff to work nine days in a row, which is abnormal. In addition, they followed Plaintiff around and stated at a meeting that "stress is what you make of it," as if Plaintiff's distress was self-induced.

17. On November 20, 1999, Plaintiff was constructively discharged by WAL-MART due to continuing retaliation.

18. While employed by WAL-MART, Plaintiff was subjected to sexual discrimination and harassment, retaliation/reprisal and other illegal acts.

19. Plaintiff was subjected to sexual aggression by Manager Prayfrock, including unwelcome sexual advances, conduct and comments. Such sexual behavior made Plaintiff uncomfortable and altered the terms and conditions of her employment.

20. Defendant WAL-MART failed to take prompt and appropriate remedial action, despite complaints by Plaintiff and other women, and despite notice of Manager Prayfrock's behavior. Defendant WAL-MART failed to use reasonable care to prevent and correct promptly any sexually harassing behavior. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by the employer.

21. Defendant's failure to prevent or remedy the hostile

environment pervading the workplace created intolerable working conditions for Plaintiff, encouraging Manager Prayfrock to continue directing improper sexual behavior at Plaintiff.

22. As a direct and proximate result of the above-described acts, Plaintiff has suffered severe emotional, physical and financial injuries and sickness.

**COUNT ONE**

**(Discrimination/Sexual Harassment)**

Plaintiff realleges every paragraph of the Complaint.

23. Defendant's actions constitute sexual harassment under Title VII of the Civil Rights Act of 1964, as amended by the Equal Opportunity Act of 1972, 42 § 2000e et seq., and the Minnesota Human Rights Act, 363.01-.20 ("MHRA").

24. Plaintiff was subjected to unwelcome sexual conduct directed at her as a woman, on the basis of her sex and gender.

25. This conduct was hostile, oppressive, severe, pervasive, abusive and intimidating.

26. Plaintiff reasonably was offended by such conduct.

27. The hostile environment pervading Defendant's workplace altered the terms and conditions of Plaintiff's employment.

28. Defendant failed to take prompt, appropriate remedial action in response to the actual and constructive notice of sexual harassment, with the result that the misconduct continued.

29. Manager Prayfrock's conduct was within the scope of his employment, and Defendant WAL-MART is responsible for it.

30. As a result of Defendant's misconduct, Plaintiff has suffered injuries of a personal, physical and bodily nature,

including but not limited to, severe emotional distress, mental anguish, physical injury, lost income and earning capacity, and other losses, exceeding $75,000.00.

**COUNT TWO**

**(Retaliation/Reprisal)**

Plaintiff realleges every paragraph of the Complaint.

31. Plaintiff engaged in protected activity, resisting hostile environment harassment. Defendant responded with adverse employment action, including constructive discharge. Defendant's conduct constituted unlawful retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Act of 1972, and unlawful reprisal under the MHRA, 363.02 subd. 7.

32. As a direct and proximate consequence of Defendant's retaliation/reprisal, Plaintiff has suffered severe injuries including emotional distress, physical injury, lost income and earning capacity, anguish and other losses, exceeding $75,000.00.

**COUNT THREE**

**(Assault)**

Plaintiff realleges every paragraph of the Complaint.

33. Manager Prayfrock's conduct caused Plaintiff reasonable apprehension of imminent harmful or offensive bodily contact.

34. Manager Prayfrock acted without justification, and within the scope of his employment.

35. As a result of Manager Prayfrock's assaults, Plaintiff has incurred severe injuries including but not limited to, emotional distress, mental anguish, physical injury, lost income and earning capacity, and other losses, exceeding $75,000.00.

**COUNT FOUR**

**(Battery)**

Plaintiff realleges every paragraph of thc Complaint.

36. Manager Prayfrock subjected Plaintiff to harmful or offensive bodily contact, without justification.

37. Manager Prayfrock acted within the scope of his employment.

38. As a result of Manager Prayfrock's battery, Plaintiff has incurred severe injuries including but not limited to, emotional distress, mental anguish, physical injury, lost income and earning capacity, and other losses, exceeding $75,000.00.

**COUNT FIVE**

**(Violation of Violence Against Women Act)**

39.-40. [Withdrawn]

**COUNT SIX**

**(Negligence)**

Plaintiff realleges every paragraph of the Complaint.

41. Defendant WAL-MART had a duty to use reasonable care in retaining and supervising its employees, to prevent them from inflicting foreseeable harm on Plaintiff.

42. Defendant WAL-MART breached its duty of care because if failed to protect Plaintiff from harm inflicted by Manager Prayfrock.

43. As a direct and proximate result of Defendant WAL-MART's negligence, Plaintiff has incurred substantial damages including financial and emotional losses, physical injury and physical sickness, in an amount exceeding $75,000.00.

WHEREFORE, Plaintiff prays for relief as follows:

1. A declaratory judgment that the practices complained of herein are unlawful under Title VII and the MHRA.

2. An Order permanently enjoining Defendant and its agents from harassing Plaintiff, or any other individuals, on any basis forbidden by Title VII.

3. Compensatory damages sufficient to make Plaintiff whole, reflecting emotional distress, mental anguish, physical injury, lost pay, lost income, lost earning capacity, and other losses to be proven, attributable to Defendant's violations of law.

4. Treble compensatory damages under the MHRA, Minn. Stat. § 363.071 subd. 2.

5. Punitive damages under Title VII (upon Motion) and the MHRA.

6. Costs, disbursements and expenses of this action, including reasonable attorney fees, under Title VII, 42 U.S.C. § 2000e-5(k), and other applicable law.

7. Prejudgment interest.

8. Other relief favoring Plaintiff the Court deems just and proper.

**Plaintiff demands a trial by jury on issues triable to a jury.**

Dated: 6-28-08

**LORI PETERSON & ASSOCIATES**

Lori Peterson, #212490
Tracy N. Tool, #213524
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, Minnesota 55402
Phone: (612) 321-0606

ATTORNEYS FOR PLAINTIFF